**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **ALLISON E. ARNOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:17-CV-65** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Allison E. Arnott ("Arnott") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for child's insurance benefits ("CIB")[1] under the Social Security Act ("Act").  42 U.S.C. §§ 402(d), 1381-1383f, 20 C.F.R. § 404.350.  Specifically, Arnott alleges that the ALJ failed to adequately address her limitations with concentration, persistence or pace and failed to provide sufficient reasons for discounting her credibility. I conclude that substantial evidence supports the ALJ's decision as a whole.  Accordingly, I **RECOMMEND DENYING** Arnott's Motion for Summary Judgment (Dkt. No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment.  Dkt. No. 15.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Arnott failed to demonstrate that she was disabled under the

---

[1] A claimant is entitled to child's benefits on the earnings of an insured person who is entitled to old-age or disability benefits or who has died if the claimant: 1) is the insured person's child; 2) is dependent upon the insured; 3) applies; 4) is unmarried; and 5) is under age 18; is 18 years or older and has a disability that began before she became 22 years old; or is 18 years or older and qualifies for benefits as a full-time student. 20 C.F.R. § 404.350(a).

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Arnott filed for CIB on October 1, 2012, claiming that her disability began on August 1, 2012. Administrative Record, hereinafter "R." 140. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 55–77. On March 30, 2015, ALJ David Lewandowski held a hearing to consider Arnott's disability claim. R. 35–54. Arnott was represented by an attorney at the hearing, which included testimony from Arnott and vocational expert Victor Baranauskas, Jr. Id.

On September 3, 2015, the ALJ entered his decision analyzing Arnott's claim under the familiar five-step process,[3] and denying Arnott's claim for benefits. R. 12–23. The ALJ found

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

that Arnott suffered from the severe impairments of post-traumatic stress disorder, major depressive disorder, anxiety disorder, panic disorder, borderline personality disorder and scoliosis. R. 15.  The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 15–17.  The ALJ further found that Arnott had the residual functional capacity ("RFC") to perform light work, except that she can perform frequent postural activities but only occasionally climb ladders, ropes and scaffolds. R. 17.  The ALJ determined that Arnott can understand, remember and carry out simple instructions and perform simple tasks, can occasionally interact with others; and can adapt to occasional changes in a customary work place setting. R. 17–18.  The ALJ determined that Arnott had no past relevant work, but that she could work at jobs that exist in significant numbers in the national economy, such as assembler, cafeteria attendant, and machine operator. R. 23. Thus, the ALJ concluded that she was not disabled.

Arnott requested that the Appeals Council review the ALJ's decision. On December 30, 2016, the Appeals Council denied Arnott's request for review (R. 1–5), and this appeal followed.

## ANALYSIS

### Concentration, Persistence or Pace

Arnott asserts that the mental limitations set forth in the RFC of understanding, remembering and carrying out simple instructions, performing simple tasks and occasionally interacting with others do not adequately account for her moderate limitations with concentration, persistence or pace and social functioning. Pl. Br. Summ. J. at 40–49.  Arnott asserts that "simply limiting plaintiff to simple instructions and tasks and occasional interactions with others and occasional changes in a customary work place setting without further narrative discussion of plaintiff's mental RFC, falls short of the requirements found in SSR 96-8p."  Pl.

Br. Summ. J. at 40. See Titles II & XVI: Assessing Residual Functional Capacity in Initial

Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). Arnott

further argues that the ALJ failed to include her moderate limitations in social functioning and

concentration, persistence, or pace in the hypothetical to the vocational expert. Id. at 42.

Arnott has a history of anxiety and depression, including multiple hospitalizations related

to suicidal behaviors. Arnott graduated from high school in 2012, and was working full time at

the front desk of a hotel at the time of the administrative hearing in 2015. R. 38–39, 41.

Michelle Frieben, M.D., has been Arnott's treating psychiatrist since before her alleged

onset date of August 2012.  On August 3, 2012, Arnott saw Dr. Frieben and reported that her

medications have been helpful; she started work at Texas Road House as a hostess and was going

to cosmetology school that month. R. 436. Arnott presented as well-kempt, engaged, appropriate,

fairly bright mood, normal perception, intact thought process, and above average intelligence. Id.

Dr. Frieben diagnosed PTSD, history of depression, panic attacks and cluster B traits and

adjusted Arnott's medications. Id.  In October 2012, Arnott visited Dr. Frieben and reported

being depressed for the last two weeks and not feeling well. She lost her job because she missed

a shift. Dr. Frieben recommended increasing Arnott's Effexor and returning for an appointment

in two weeks.  R. 446.

In November 2012, S. Rebecca Hughes, LPC, met with Arnott, and noted that she had

been hospitalized twice in the last year for suicide attempts and ideation, and the hospitalizations

appeared related to anniversary dates of rape and other losses. R. 692. Hughes noted that Arnott

lost her job and withdrew from cosmetology school, and continues to have difficulties with

interpersonal relationships and emotional dysregulation. Id.  Upon exam, Arnott had normal

behavior, orientation, flat affect and difficulty concentrating, difficulty sleeping, normal insight

and memory. R. 692–93. Hughes recommended continued psychiatric services. R. 693.

In January 2013, state agency physician Howard S. Leizer, Ph.D., reviewed Arnott's

records and determined that she did not have a severe mental impairment, noting that despite her

history of PTSD, affective disorder and anxiety she is taking classes in singing and acting, has

unrestricted activities of daily living and no significant psychological abnormalities in her recent

history. R. 59–60. He also noted Arnott's report that her medication was working well and

without significant side effects. R. 59.

Arnott returned to Dr. Frieben on February 20, 2013, and reported that her social life has

improved and she is spending time with new friends. R. 661. Arnott was experiencing poor

sleep due to increased stress related to family issues that occurred over the holidays. Id. Upon

examination, Arnott was well-groomed, had normal speech, full mood and affect, intact thought

process, good attention, fair memory, no psychotic symptoms, no suicidal ideation, fair insight

and judgment, and intact cognition. R. 662. Dr. Frieben discussed borderline personality disorder

diagnosis and traits with Arnott, including that she may have a different perspective from other

people about certain situations and it is important to continue open communication. Dr. Frieben

recommended continued outpatient counseling and current medications. Id.

In April 2013, Arnott reported to Dr. Frieben that she was doing fair but continues to

have episodes with increased frustration and anxiety. R. 676. Arnott reported spending a lot of

time with friends. Dr. Frieben determined that Arnott would "likely qualify for disability

services." Id. Dr. Frieben recommended coping strategies including talking to someone, going

for a walk, relaxation, scheduling physical activity and structure throughout the day. Id. Arnott

reported that she has not had a severe panic attack since taking Effexor and hasn't had a severe

episode of depression since taking Lamictal, although she had ongoing mood labililty.  Dr. Frieben recommended continuing her current medications and continuing outpatient therapy. R. 676.

Arnott saw Dr. Frieben in May 2013, and reported that she wanted to look into vocational rehabilitation. R. 682. Upon examination, Arnott was groomed and engaging, with normal speech, full affect, goal directed and logical thoughts, no psychotic symptoms, good attention, good insight, poor-to-fair judgment and above average intelligence. R. 682–83. Dr. Frieben assessed a history of PTSD, major depression that is currently in remission, and borderline personality disorder. R. 683.  In July 2013, Dr. Frieben met with Arnott and noted that she's had a recurring urinary tract infection that is very stressful, creates anxiety, and led to a conflict with her mother that involved the police who brought her to the emergency room. R. 795. Arnott began crisis services after that incident and reported anxiety and thinking about her former romantic relationships and past trauma. Id. She reported thoughts of self harm and used crisis services and therapy services and is interested in vocational rehabilitation. Arnott reported spending time with friends, drinking alcohol twice and smoking marijuana.  Arnott's mental examination was normal, aside from unkempt appearance, poor judgment, little insight, weight loss and difficulty sleeping. R. 796–97. Dr. Frieben noted that Arnott's current medication regimen had provided stability for 2-3 years, so it was risky to change. R. 797.

Arnott was admitted to New Horizons for an inpatient stay from August 6 –11, 2013, due to depression, suicidal and homicidal thoughts. R. 746–70.  Arnott attended peer support groups and noted that she had symptom improvement. R. 744. Arnott was discharged and directed to continue outpatient counseling services. R. 750.

On August 14, 2013, Dr. Frieben completed a Mental Status Evaluation Form at the agency's request. R. 781–85.  Dr. Frieben noted Arnott's history of multiple psychiatric hospitalizations and multiple emergency room visits, and no cognitive deficits. Dr. Frieben added that Arnott was high risk due to poor insight and judgment due to her history and recent behaviors, stating "[t]his summer (2013) [Arnott] has demonstrated erratic behaviors that have escalated to ER visits- prescreenings with safety plans.  Also with crisis interventions services.  On 8/5/13 she was hospitalized at New Horizons- short term residential program for psychiatric crisis." R. 785.

On August 30, 2013, Arnott visited Dr. Frieben and reported being sexually assaulted recently, and having anxiety and panic attacks. R. 813.  Arnott reported calling crisis and outpatient services, but also reported missing appointments because she "has been busy, wanting to model, had some photos done and also filed a report with WRC of the assault.  She says that she decided not to go to college, she missed the deadline for payment, but is looking for a job." Id.  Arnott reported conflict with her mother, and taking her mother's car and leaving for a week. Id.

On September 27, 2013, state agency psychologist Richard Milan, Ph.D., reviewed Arnott's records and determined that despite Arnott's anxiety, depression, PTSD and personality disorder, she should be able to understand and remember simple instructions and simple work procedures. R. 72.  Dr. Milan found that Arnott was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from her psychological symptoms and perform at a consistent pace.  Dr. Milan stated that Arnott should be able to follow 1-2 step instructions and attend to simple tasks for 2 hour periods with usual breaks. R. 73.  Dr. Milan

also found that Arnott was moderately limited in her ability to interact appropriately with the general public and get along with co-workers or peers, but that she should be able to perform simple work in an environment with limited contact with others, and can work in a static environment, adjusting adequately to changes and maintaining safety. R. 73.  Dr. Milan stated:

> Claimant is currently being treated for her anxiety, depression, PTSD, and personality disorder. She has had a couple of hospitalizations in 2009 and 2011. The PTSD was the result of a rape; however, she was sexually assaulted again in July 2013 and voluntarily admitted herself due to the increased anxiety and depression that has occurred as a result of the assault.  Even after the assault, at her most recent psychiatric visit on 08/30/2013, she demonstrated forward thinking, setting goals of what she wants to achieve and denying depression. Mental status was normal.  She is able to take care of her [activities of daily living], drive, go out alone, and shop for groceries.  Based on the medical evidence, the claimant is capable of simple, unskilled work on an ongoing basis.

R. 74.

In October, 2013, Arnott reported being overall "well," and being less stressed and anxious than in the past. R. 908.  Arnott reported no recent panic attacks or flashbacks, and participated in fashion week in Roanoke as a volunteer.  Arnott reported her main issue is sleep and that nightmares wake her up. Her mental status examination was normal, with impaired judgment and little insight. R. 909–10.

Arnott was hospitalized twice in November 2013 for suicide attempts, once at New Horizons after cutting her wrists due to issues with her boyfriend, and the second time at Montgomery Regional Hospital after attempting to overdose on Lamictal. R. 823, 840, 966–69, 1047, 1059.   Arnott saw Dr. Frieben after those incidents on November 20, 2013, and reported feeling anxious and having panic attacks, and that she cannot sleep without Seroquel but it makes her feel too groggy.  R. 1032.  Arnott was given Vistaril at New Horizons but doesn't like taking it because it is sedating. Arnott reported thinking about coming off of all her medications. Dr. Frieben adjusted Arnott's medications and Arnott's mother agreed to monitor them.  Upon

examination, Arnott was restless, irritable, anxious, depressed, had a labile affect, perseverating thought process, unfocused thought content, normal cognition, impairment judgment and limited insight. R. 1034.

In January 2014, Arnott was taken to the hospital by police following an alleged suicide attempt that took place after she was angry with her boyfriend. R. 970. Arnott was kept overnight and diagnosed with severe depression. R. 978–79.

In February 2014, Arnott reported that she tried to move out on her own, but ended up moving back home with her mother. R. 1222. She was fired before she started working as a personal assistant because she felt that the boss said rude things to her. Id. Arnott was feeling disappointed and negative. Dr. Frieben suggested day treatment, but Arnott was not interested. Dr. Frieben also recommended more structure. Arnott's mental status exam was normal with depressed mood, impaired judgment and limited, blaming insight. R. 1223. Arnott was voluntarily committed to New Horizons on June 2, 2014, after cutting her arm and texting a photo of it to her boyfriend. R. 1125, 1150. She was discharged on June 5, 2014. R. 1315.

On August 13, 2014, Arnott saw Dr. Frieben and reported doing ok, still having social anxiety, and wanting to start college again. R. 1265. Arnott reported that her sleep and appetite were ok. R. 1265–66. In October 2014, Arnott reported working at the mall, but feeling depressed due to romantic relationship issues. R. 1250. In November 2014, Arnott asked Dr. Frieben for support services so that she can fill out paperwork for college. R. 1237. She reported being motivated, wanting to work on things, and having made better choices. Arnott went to a yoga class, and discussed leaving behind all the "brain drama." Id. In December 2014, Arnott reported feeling depressed due to the time of year and issues with her ex-boyfriend. R. 1700. She had increased anxiety but was eating okay and continued to see her outpatient provider. Id.

9

Dr. Frieben noted that Arnott's insight and coping skills have improved over the years, and her long term goals are to put her goals into action. R. 1702.  In January 2015, Arnott reported doing well overall, no panic attacks, good sleep and good appetite.  Dr. Frieben noted Arnott's brighter mood, and she reported being in a good relationship and liking her job. R. 1687. Her mental status exam was normal. R. 1688.

Based on the above evidence, the ALJ determined that Arnott had moderate limitations with social functioning and maintaining concentration, persistence or pace in step three of his analysis. R. 16–17.  With regard to social functioning, the ALJ noted that the record reflects adequate social functioning with some episodes of difficulty interacting with others. R. 16.  With regard to concentration, persistence or pace, the ALJ noted:

> The claimant has endorsed some problems with maintaining concentration. However, some of her activities indicate adequate concentration, persistence or pace.  She stated her hobbies included acting, singing, blogging, reading, watching television, drawing, painting and playing games.  Her Adult Function Report noted she does homework and finishes chores.  These activities indicate mild to no difficulties maintaining concentration, persistence or pace.  However, subsequent to her psychiatric hospitalizations, mental status exams reveal some issues with persistence, judgment and insight.  During exacerbations of her affective, anxiety and personality disorders, Ms. Arnott may have difficulties maintaining concentration, persistence or pace.  Therefore, the undersigned assessed her with no more than moderate difficulties in maintain concentration, persistence or pace.  This assessment is consistent with the determinations of reviewing State agency psychologists.

R. 17.

In step four of his analysis, the ALJ reviewed Arnott's testimony, the medical evidence and the opinion evidence in detail. R. 18–22.  The ALJ noted that Arnott was currently working as a front desk clerk for Blacksburg Days Inn, and testified that she is able to handle angry guests. R. 19.  Arnott testified that she lives with her mother and her boyfriend and her psychotropic medications keep her stable. Id.  The ALJ also noted Arnott's testimony that she

has difficulty concentrating and suffers from fatigue and anxiety. R. 19.   The ALJ noted that

Arnott's treatment history does not support the degree of limitation alleged. R. 20. Specifically,

the ALJ found that Arnott's mental status exams indicate good mental status overall; that

counseling sessions reflected that her significant mental symptoms usually revolve around

arguments with her boyfriend or mother; and that despite those issues, Arnott's mental status

exams normally showed intact memory, attention, concentration, thought process and thought

content. R. 20.  The ALJ noted that Arnott's mental status exams improved over time, and

despite issues with judgment or anger directed at her boyfriend, her mental status was generally

normal.  The ALJ noted that even when Arnott presented as depressed and anxious, such as her

December 18, 2014 session, her thought process, content, cognition, memory, attention,

concentration, judgment and insight were intact. R. 20, 1693.

The ALJ reviewed the physician opinions, and gave no weight to the initial determination

of Dr. Leizer that Arnott had no severe mental impairments, noting that Dr. Leizer's opinion was

consistent with the record at the time of his review, but that additional evidence indicates that

Arnott has significant mental impairments. R. 20–21.  The ALJ gave significant weight to Dr.

Milan's opinion that Arnott has severe mental impairments and limitations, but is able to perform

simple instructions with simple work procedures. R. 21.  The ALJ determined that Dr. Milan's

opinion is consistent with the record. Id.

The ALJ discussed the mental status form completed by Dr. Frieben and noted that Dr.

Frieben began treating Arnott in November 2011. Id.  The ALJ noted that Dr. Frieben found that

Arnott had no cognitive deficits and above average intelligence; poor judgment and insight; and

erratic behaviors that escalated to emergency room visits and psychiatric admissions. Id.  The

ALJ gave great weight to Dr. Frieben's opinion that Arnott had no cognitive deficits and above

average intelligence, and agreed with the history of psychiatric admissions as summarized by Dr.

Frieben. Id.

> The ALJ summarized his findings, stating:
>
> Although the claimant has periods when her mental symptoms are exacerbated,
> she normally functions well, mentally and physically.  As discussed previously,
> she said she cared for her pets, clean, vacuumed, did laundry, took acting and
> singing lessons, did homework, finished chores, and attended medical
> appointments.  She said she had no problems performing personal care.  She said
> she could go out alone, drive a car and count change.  She said she made simple
> meals such as sandwiches and shopped in stores.  She said her hobbies included
> acting, singing, blogging, reading, watching television, drawing, painting and
> playing games. Through the date of this decision, she said she works as a front
> desk clerk and has no problems handling angry guests. …During a January 16,
> 2015 session at NRV, the claimant said she was doing well overall and had no
> panic attacks.  She said she had good sleep and appetite, a brighter mood and was
> in a good relationship.  She said she liked her job and her new boyfriend treated
> her well.  She said she had a good holiday.  Her mental status and physical exams
> were normal.

R. 21–22.

Given all of the evidence, the ALJ concluded that Arnott was capable of understanding,

remembering and carrying out work with simple instructions and performing simple tasks,

occasionally interacting with others, and adapting to occasional changes in a customary work

place setting. R. 18. During the administrative hearing, the ALJ presented a hypothetical

individual to the vocational expert who is able to understand, remember and carry out simple

instructions, perform simple tasks, occasionally interact with others and have occasional changes

in the customary workplace setting. R. 51–52.  The vocational expert testified that such an

individual could perform jobs in the national economy, such as assembly, cafeteria attendant and

machine operator. R. 52.

Arnott argues that the RFC set forth by the ALJ failed to properly account for her

moderate limitations with concentration, persistence or pace. Arnott asserts that the ALJ erred by

finding that she could perform work with simple instructions and simple tasks.  In support,

Arnott alleges that the evidence of record establishes that she is incapable of maintaining

concentration, persistence and pace to sufficiently perform work at the substantial gainful

activity level; that she cannot handle the normal stresses encountered in competitive work; and

that she is easily overwhelmed and has not been able to maintain any employment for sustained

periods as evidenced by her employment history. Pl. Br. Summ. J. p. 48. Arnott relies upon her

history of suicide attempts and self-destructive behavior; her testimony that she has difficulty

handling increased demands at the hotel; her testimony that her mother helps her keep track of

her medication; and her testimony that she has difficulty concentrating and staying on task due to

intrusive thoughts or memories.  Arnott also notes that she was discharged from a job in food

service because she "couldn't keep it together for regular attendance." Pl. Br. Summ. J. p. 48.

In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a

claimant's limitations in concentration, persistence, or pace by restricting the claimant to simple,

routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from

the ability to stay on task. Only the latter limitation would account for a claimant's limitation in

concentration, persistence, or pace." Id. at 638.  The court noted, however, that the ALJ may find

that the concentration, persistence or pace limitation would not affect a claimant's ability to

work, in which case it would have been appropriate to exclude it from the hypothetical tendered

to the vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL

3757204, at *3 (N.D.W. Va. June 16, 2015). The court found error in Mascio because the ALJ

13

did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not

translate into a limitation in his RFC.

The <u>Mascio</u> decision does not broadly dictate that a claimant's moderate impairment in

concentration, persistence, or pace must always translate into a limitation in the RFC. Rather,

<u>Mascio</u> underscores the ALJ's duty of explanation to adequately review the evidence and explain

the disability decision, especially where, as the ALJ held in <u>Mascio</u>, a claimant's concentration,

persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled

work. The ALJ has the responsibility to address the evidence of record that supports that

conclusion, and ensure that the hypothetical presented to the vocational expert includes all of the

limitations set forth in the RFC.

The <u>Mascio</u> court relied upon <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180

(11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a

claimant's limitations in concentration, persistence, or pace by restricting the claimant to simple,

routine tasks or unskilled work. However, the <u>Winschel</u> court explained that:

> when medical evidence demonstrates that a claimant can engage in simple,
> routine tasks or unskilled work despite limitations in concentration, persistence,
> and pace, courts have concluded that limiting the hypothetical to include only
> unskilled work sufficiently accounts for such limitations. Additionally, other
> circuits have held that hypothetical questions adequately account for a claimant's
> limitations in concentration, persistence, and pace when the questions otherwise
> implicitly account for these limitations.

<u>Id.</u> (internal citations omitted). Courts within the Fourth Circuit have come to rely upon

<u>Winschel's</u> reasoning to comply with <u>Mascio</u>. <u>See</u> <u>St. Clair v. Colvin</u>, No. 7:13cv571, 2015 WL

5310777, at * 7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative

physician that plaintiff's impairment in concentration, persistence or pace did not prevent him

from performing simple, repetitive tasks); <u>Del Vecchio v. Colvin</u>, No. 1:43cv116, 2015 WL

5023857 at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence or pace does not prevent him from performing simple, spoken instructions and simple routine tasks). Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step 4 analysis, and noted that his treating physicians found that he exhibited good attention, intact memory, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and those limitations must be included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

15

Here, substantial evidence supports the ALJ's decision that despite Arnott's limitations in concentration, persistence, or pace, she was capable of understanding, remembering and carrying out simple instructions and performing simple tasks, with occasional interaction with others. The ALJ recognized Arnott's mental health history, her severe mental impairments and the limitations Arnott suffers as a result of those impairments.  The ALJ assessed Arnott with moderate limitations with concentration, persistence or pace based upon her testimony that she has difficulty concentrating.  Arnott's mental status exams consistently reflected over multiple years that Arnott's concentration, attention and memory were within normal limits. Arnott's records contain no objective findings related to problems with concentration, persistence or pace. Dr. Milan was the only physician in the record who found that Arnott had limitations with concentration, persistence and pace, and determined that despite those limitations, Arnott was capable of performing simple, unskilled work on an ongoing basis. R. 74. See Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (Opinions of two doctors that claimant can perform simple routine tasks despite moderate impairment in concentration, persistence or pace provided substantial support for ALJ's RFC.)  The ALJ gave Dr. Milan's opinion great weight and included his recommended limitations in Arnott's RFC, and in the hypothetical question presented to the vocational expert.  Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. See Gautreau v. Colvin, No. 2:15CV81, 2016 WL 1314314, at *9–10 (E.D. Va. Feb. 26, 2016), report and recommendation adopted, No. 2:15CV81, 2016 WL 1298122 (E.D. Va. Mar. 31, 2016), aff'd sub nom. Gautreau v. Berryhill, No. 16-1628, 2017 WL 1423297 (4th Cir. Apr. 21, 2017).

Arnott also asserts that the ALJ's decision fails to satisfy the requirements of SSR 96-8p. SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence

supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011

WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts (e.g.,

laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p at

*7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012)

(citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)).

     The ALJ's discussion of Arnott's mental limitations satisfies the requirements of SSR 96-

8p. The ALJ considered both medical and non-medical evidence in assessing Arnott's RFC and

provided the narrative discussion required by the regulations. The ALJ reviewed the history of

Arnott's mental symptoms and her mental health treatment in detail. R. 18–20.  The ALJ then

summarized the evidence relating to Arnott's mental health symptoms and treatment, and noted

that Arnott has a history of treatment for depression and anxiety, but her overall mental status

exams indicate good mental status, and counseling sessions showed her significant mental

symptoms usually revolve around arguments with her boyfriend and her mother.  R. 20.  The

ALJ found that despite these issues, Arnott's mental status exams normally showed intact

memory, attention, concentration, thought process and thought content. Id.  The ALJ also

reviewed the opinion evidence, including a mental status form completed by Arnott's treating

psychiatrist, and the opinions of state agency psychological consultants. R. 20–21. Thus, the

ALJ's narrative discussion considering the medical opinions, Arnott's testimony, and evidence

of mental impairment satisfied the requirements of SSR 96-8p. See Taylor v. Astrue, No. 11-cv-

32, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8p requires an ALJ

to consider the evidence presented on a function-by-function basis, it does not require the ALJ to

produce such a detailed statement in writing, but rather is sufficient if it includes a narrative

discussion of the claimant's symptoms and medical source opinions).

Overall, Arnott's argument is merely an invitation to re-weigh the evidence and conclude

that Arnott suffers from impairments which more severely limit her functional capacity than the

RFC found by the ALJ.  Arnott's argument misses the review function of this court—whether

substantial evidence supports the ALJ's determination.  Arnott does not, and cannot, point to any

improper legal standard the ALJ relied upon or demonstrate that the ALJ failed to consider

contradictory evidence or failed to explain the decision reached.  It is the ALJ's province to

weigh the evidence, determine how to handle conflicting evidence, and reach a conclusion of

whether Arnott is disabled.  The ALJ in this case fulfilled his duties and substantial evidence

supports the RFC determination and the conclusions as to Arnott's RFC. See Smith v. Chater, 99

F.3d 635, 638 (4th Cir. 1996).

### Credibility[4]

Arnott also asserts that the ALJ inaccurately characterized her activities of daily living

and erred by finding that her statements concerning the intensity, persistence and limiting effects

---

[4] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7p
when it ruled in SSR 16-3p that "credibility" is not appropriate terminology to be used in determining benefits. See
Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p (S.S.A. Mar. 16, 2016) (effective March
28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations
do not use this term. SSR 16-3p at *1. In doing so, we clarify that subjective symptom evaluation is not an
examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an
overarching credibility determination and instead must assess whether the claimant's subjective symptom statements
are consistent with the record as a whole.

Here, SSR 16-3p was issued after the ALJ's consideration of Arnott's claim, and both the ALJ's opinion
and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision
based on the provisions of SSR 96-7p, which required assessment of the claimant's "credibility." See Keefer v.
Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-
05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL
1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D.
Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").  However,
I note that the methodology required by both SSR 16-3p and SSR 96-7p, are quite similar. Under either, the ALJ is
required to consider Arnott's report of her own symptoms against the backdrop of the entire case record; in SSR 16-
3p, this resulted in a "credibility" analysis, in SSR 16-3p, this allows the adjudicator to evaluate "consistency."

of her symptoms are not entirely credible. Pl. Br. Summ. J. at 49–52. Arnott's subjective allegations of limitations are not conclusive. Rather, under the two-step credibility analysis, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Arnott met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and persistence of the claimed symptoms and their effect upon Arnott's ability to work. Id. at 594–95. If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

"[T]he ALJ must 'build an accurate and logical bridge from the evidence to his conclusion that [the claimant's] testimony was not credible…'" Brown v. Comm'r, 873 F.3d at 269 (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). In Brown, the Court held that the ALJ erred by discounting the claimant's credibility based upon daily activities without acknowledging the limited extent of those activities as described by Brown or explain how those activities showed that he could sustain a full-time job. Id. at 269. The Court also found that the ALJ erroneously relied upon his own observations and medical judgments in finding that Brown's pain was not as limiting as he claimed because he could sit through the ALJ's hearing, take a psychological test and manage his own money. Id. at 271.

Here, the ALJ followed the required two step process and determined first that there is an underlying medically determinable physical and mental impairment that could reasonably be expected to produce Arnott's symptoms. R. 15. See SSR 96–7p, at *1. The ALJ set forth Arnott's subjective complaints about the intensity, persistence and limiting effects of her

19

symptoms in detail in his opinion.  R. 18–22. After a review of Arnott's treatment records and

allegations of disability, the ALJ stated:

> [a]fter careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, the claimant's statements concerning the
> intensity, persistence and limiting effects of these symptoms are not entirely
> credible for the reasons explained in this decision.

R. 25–26.  The ALJ outlined his reasons for this determination, referencing Arnott's treatment

history for depression and anxiety; her good mental status reports on exam; the fact that Arnott's

significant mental symptoms usually revolve around arguments with her boyfriend or mother;

and her improving mental status overall. R. 20.

Arnott takes issue with the ALJ's references to her activities of daily living, including

reports that she took acting and singing lessons, her work as a front desk clerk and "has no

problems handling angry guests." R. 21–22.  Arnott asserts that the ALJ failed to consider that

while she reported doing household chores weekly, she also receives assistance from her mother;

that her singing and acting do not occur on a daily basis; that she does not have stable

relationships; that the hobbies listed were not performed daily. Pl. Br. Summ. J. p. 49.  Arnott

also asserts that the ALJ mischaracterized her statement that she can handle angry guests at the

hotel because she testified that when dealing with angry guests, "I try to tell them to calm down,

that I can't help them if they're going to be irrational and upset and it's really hard for me to stop

and kind of take myself out of the situation or separate myself from this person's anger.  I just

start shaking. I'll get really upset and then like as soon as I can get away from them I'll just go in

the back and cry for a little while."  R. 43.

Substantial evidence supports the ALJ's determination of Arnott's credibility.  Here,

unlike in Brown, the ALJ properly considered Arnott's daily activities along with other evidence

in the case. Arnott's daily activities, hobbies, medication management and treatment history referenced by the ALJ are supported by her testimony and the record.  I agree with Arnott that the ALJ's statement that she testified that she "has no problems handling angry guests," is not supported by her testimony that she starts shaking, gets upset and goes in the back to cry after dealing with angry hotel guests. R. 22, 43.  However, this one mischaracterization does not undermine the ALJ's entire credibility analysis.  The ALJ did not ignore Arnott's testimony with regard to her depression, anxiety, difficulty concentrating, past hospitalizations and suicide attempts.  However, the ALJ found that Arnott's testimony was not fully supported by the evidence as a whole, including her daily activities. The ALJ found that Arnott normally functions well, not only because she can perform chores, take acting and singing lessons, do homework, go out alone, drive a car, and make meals; but also because her physical exams are normal, aside from scoliosis, her mental status exams were largely normal, and she recently reported doing well overall, with no panic attacks, good sleep, good appetite, a bright mood and in a good relationship. R. 21–22.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Arnott's subjective allegations of disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96–4p, (July 2, 1996); SSR 96–7p, (July 2, 1996).

In this case, the ALJ found that Arnott's statements regarding the severity of her limitations were not wholly credible because they were not supported by the objective medical evidence, her treatment history, and her daily activities. R. 25–28. The ALJ's opinion includes a detailed consideration of Arnott's medical history along with Arnott's own allegations. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

It is apparent that the ALJ reviewed the record regarding Arnott's impairments in detail and measured her statements about the severity of her symptoms and limitations against the objective evidence.  This is not a case where the ALJ improperly substituted his own observations and medical judgments in place of the record evidence. Considering Arnott's treatment notes, together with the medical opinions, substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Arnott's statements regarding the extent of her limitations. The ALJ's evaluation of Arnott's symptoms is supported by substantial evidence, and the court will not disturb it.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, I recommend affirming the Commissioner's decision, **GRANTING** the defendant's motion for summary judgment, and **DENYING** Arnott's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

to within the period prescribed by law may become conclusive upon the parties. Failure to file

specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of

such objection.

Enter: July 17, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge